UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

# MEMORANDUM

| | | | |
|---|---|---|---|
| Case No. | CV 13-80 DSF (AGRx) | Date | 9/8/2014 |
| Title | Rockwell L. Scharer, III v. OneWest Bank, FSB, et al. | | |

| Present: The Honorable | DALE S. FISCHER, United States District Judge |
|---|---|

| Debra Plato | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** (In Chambers) Order GRANTING Defendants' Motions for Summary Judgment (Dkt. Nos. 69, 74)

In this action, Plaintiff Rockwell L. Scharer, III alleges that credit reporting agencies Experian Information Solutions, Inc., Equifax, Inc., and TransUnion Corp. (collectively, the CRAs), and OneWest Bank, FSB (OneWest) violated the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 et seq., and California's Consumer Credit Reporting Agencies Act (CCRAA), Cal. Civ. Code §§ 1785.1 et seq. Scharer also asserts a claim of negligent infliction of emotional distress against each Defendant. All claims arise from Defendants' alleged failure to properly report and reasonably investigate disputed foreclosures that appeared on Scharer's credit report. All Defendants move for summary judgment.[1]

## I. UNDISPUTED FACTS

In mid-2006, Scharer purchased three Las Vegas area properties financed by loans from IndyMac Bank, FSB (IMB). (OneWest SUF ¶ 1.) In 2008, following the nationwide economic downturn, Scharer stopped making payments on the properties and

---

[1] The CRAs filed a joint motion for summary judgment on July 14, 2014. (Dkt. 69.) OneWest moved separately one day later. (Dkt. 74.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

defaulted on the loans. (Id. ¶ 5; CRAs' SUF ¶¶ 62-64.)[2] At some point before Scharer defaulted, the Federal Deposit Insurance Company (FDIC) had taken over IMB. (OneWest SUF ¶ 3.) As IMB's receiver, the FDIC formed Indymac Federal Bank, FSB (IMFB), which acquired IMB's assets, including servicing responsibilities for Scharer's loans. (Id. ¶ 4.) IMFB was servicing Scharer's loans at the time of his default. (Id. ¶ 5.)

On March 19, 2009, the FDIC sold certain assets of IMFB, including Scharer's loans, to the newly-formed OneWest. (Id. ¶ 7.) Scharer received written notice that OneWest had acquired servicing rights to his loans. (Id. ¶ 8.) In March and April 2009, the three properties entered foreclosure proceedings. (Declaration of Sarah Conway, Ex. 11; CRAs' SUF ¶¶ 71, 73.) OneWest eventually foreclosed on two of the properties through Trustee's sales in June and November 2009, but Scharer sold the third property through a short sale that IMB had previously approved. (CRAs' SUF ¶¶ 70, 72, 75.) Neither IMFB nor OneWest ever approved short sales, or represented to Scharer or his real estate agent that short sales had been approved, as to the two other properties. (OneWest SUF ¶ 9.; Declaration of J. Kevin Snyder (Snyder Decl.) Exs. A, D, O.) Nonetheless, based solely on conversations with his agent, Scharer believed that the banks would stay any foreclosures pending short sale discussions. (Id.)

In September 2009, before the second foreclosure sale, Scharer sued IMFB in Nevada state court. (Snyder Decl., Ex. K.) The suit sought, inter alia, damages and declaratory relief for implied short sale agreements that IMFB had purportedly breached through the first foreclosure sale. (Id.) When IMFB, who had ceased servicing Scharer's loans prior to the first foreclosure sale, did not answer, Scharer filed an application for default judgment. (Snyder Decl., Ex. L.) In an accompanying affidavit, Scharer declared, in part:

> This case was filed, originally, to pursue a judgment against [IMFB] for wrongful foreclosure on three of my properties. At this point, however, I am only seeking for a directive to the credit reporting agencies to remove the foreclosure from my credit report, in light of the improper foreclosure by [IMFB].

---

[2]Plaintiff does not dispute these facts but nevertheless includes boilerplate objections. As noted in this Court's standing orders, "blanket or boilerplate objections to the opponent's statements of undisputed fact . . . will be overruled and disregarded." Scharer apparently chooses to disregard this instruction; his objections are almost entirely boilerplate and Scharer did not provide the Court with an accompanying memorandum as required by the Court's standing orders. In light of these shortcomings, the Court has disregarded Scharer's unsupported or meritless objections and treats Defendants' corresponding statements of fact as undisputed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

(Id.) On April 30, 2010, the Nevada court entered a default judgment (Nevada Judgment), taken nearly verbatim from Scharer's proposed judgment, which included the following language:

> **ORDERED** the foreclosure on the Plaintiff's home loans with IndyMac . . . was improperly reported to the credit bureaus as a foreclosure in violation of the Fair Credit Reporting Act; and it is further
>
> **ORDERED** that the credit reporting agencies, Experian, TransUnion, Equifax and any other similar or related credit reporting agencies eliminate any foreclosure references as reported to the credit bureaus in connection with the Loans.

(Snyder Decl., Ex. M.) As the foregoing indicates, the Nevada Judgment named the CRAs even though they were not parties to the case and had not been named in the complaint. (Snyder Decl., Exs. K, M.) None of the CRAs received notice of the Nevada Judgment. (CRAs' SUF ¶ 108.) Neither the complaint nor the Nevada Judgment named OneWest. (Snyder Decl., Exs. K, M.)

In September 2009, around the time Scharer filed the Nevada suit, he also retained THD Credit (THD), a credit repair company, to send dispute letters on his behalf to the CRAs contesting multiple notations on his credit reports. (CRAs' SUF ¶ 134.) Scharer did not review any of the THD letters when they were sent. (Id. ¶ 135.)[3]

Beginning in January and February 2010, the CRAs began receiving letters from THD on Scharer's behalf. (Id. ¶¶ 136, 140, 148.) Each letter requested that the CRA investigate multiple allegedly inaccurate notations on Scharer's credit file. (Declaration of Sarah Conway (Conway Decl.), Ex. 53; Declaration of Pamela Smith (P. Smith Decl.), Ex. B; Declaration of Steven Reger (Reger Decl.), Ex 3.) The disputed notations included the two foreclosed mortgage accounts, which the letters described as: "Not my account, please delete." (Id.)

From January 2010 through April 2012, each CRA received roughly eight materially identical letters from THD concerning Scharer's credit file. Prior to October

---

[3] Scharer disputes the CRAs' contention that only one THD letter included a copy of the Nevada Judgment. (E.g. Scharer's Resp. To CRAs' SUF ¶ 167.) To support this claim, Scharer cites his own declaration and corresponding (but untimely filed) exhibits. (Id.) Because he lacks personal knowledge concerning the contents of the letters that THD sent, Scharer is not competent to testify as to the letters' authenticity. See Fed. R. Evid. 602, 901. The Court accordingly overrules Scharer's objections concerning the contents of the THD dispute letters.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

2010, none of the dispute letters referenced or included a copy of the Nevada Judgment; they simply repeated the claim "Not my account, please delete."[4] In October 2010, the CRAs received a dispute letter from THD that repeated the prior "Not my account, please delete" dispute claim and, for the first time, included a copy of the Nevada Judgment. (Conway Decl., Ex. 29; P. Smith Decl. ¶ 54; Reger Decl. ¶¶ 40-41.) The letters did not, however, reference the Nevada Judgment or identify its relation to the disputed credit lines. (Id.)

When able to locate Scharer's account, the CRAs reinvestigated the disputes by sending Automatic Consumer Dispute Verification (ACDV) forms to OneWest. In line with the THD letters' narrow description of Scharer's dispute, the ACDVs stated only that Scharer disputed ownership of the accounts.[5] (E.g. Reger Decl., Exs. 4, 16, 20, 24; P. Smith Decl. ¶¶ 39, 51, 64, 76.) Between October 2010 and October 2011, the CRAs received several more dispute letters. These letters noted the "Not my account, please delete" dispute, but did not reference or include a copy of the Nevada Judgment. (CRAs' SUF ¶¶ 194-211.)

In September or October 2011, Scharer retained attorney John Palmer to dispute the foreclosure notations with the CRAs. (CRAs' SUF ¶ 212.) On November 30, 2011, Experian received a dispute letter from Palmer that attached the Nevada Judgment and requested that Experian remove the foreclosure references pursuant to the judge's order. (Id. ¶ 214; Conway Decl., Exs. 33, 36 at 16.) Without reinvestigating the claim by sending an ACDV to OneWest, Experian complied with the request by removing the foreclosure references from the credit report. (CRAs' SUF ¶ 216.) Palmer sent similar letters to Equifax and TransUnion. (Id. at 217-224.) Given the lack of identifying information in the letters, neither Equifax nor TransUnion was able to locate Scharer's

---

[4]Scharer claims that he personally sent a May 27, 2010 letter to each CRA that attached a copy of the Nevada Judgment and disputed the foreclosure notations on this basis. Even accepting Scharer's claim, which the CRAs contest, this fact is immaterial because any violations relating to the May 27, 2010 letters are time barred. See 15 U.S.C. § 1681p; Cal. Civ. Code § 1785.33. Scharer also objects, on a variety of evidentiary bases, to declarations from various CRA employees that detail the CRAs' responses to each dispute notice. The court finds many of these objections tenuous, but even if meritorious, exclusion of these declarations would not preclude summary judgment because Scharer has failed to present evidence that his credit reports ever contained inaccurate or incomplete information. See infra Section III.A(a), B(a).

[5]Although Scharer objects to the CRAs' evidence supporting this claim, even Scharer's rebuttal expert acknowledged that the ACDVs described the dispute as concerning account ownership and did not reference the Nevada Judgment. (Declaration of Paul M. Hittelman (Hittelman Decl.), Ex. B.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

credit report file. (Id.) Both CRAs sent letters to Palmer noting this problem; neither received a response. (Id.)

In April 2012, the CRAs received another set of dispute letters from THD on Scharer's behalf. (CRAs' SUF ¶ 237.) As before, these letters did not include the Nevada Judgment and repeated the "Not my account, please delete" dispute.[6] (Id.)

Experian did not initiate a new investigation because the disputes noted in the April 2 letter were identical to those that Experian's prior reinvestigations had verified as frivolous. (CRAs' SUF ¶ 226.) Because it had previously sent frivolous dispute letters to Scharer, Experian did not respond to the April 2 letter. (Id.) Equifax and TransUnion sent ACDVs to OneWest noting Scharer's claim that the accounts did not belong to him. (CRAs' SUF ¶¶ 232-36.) On April 17, OneWest sent out-of-cycle updates to Experian regarding the disputed accounts that included the foreclosure references. (Id. ¶ 227.) Experian accordingly returned the foreclosure references to Scharer's file. (Id.)

On April 23, 2012, Palmer sent a second round of letters to Experian and Equifax. (Id. ¶¶ 238, 242.) These letters included a copy of the Nevada Judgment and requested that the foreclosure references on Scharer's credit reports be removed on this basis. (Id. ¶¶ 238, 243.) In May 2012, Experian and Equifax removed the foreclosure notations from Scharer's credit file. (Id. ¶¶ 240, 246.) In lieu of a letter, Palmer called TransUnion with the same request. (Id. ¶¶ 251-54.) The foreclosure references were accordingly updated. (Id.)

Equifax received no further disputes regarding the foreclosed accounts. Experian and TransUnion, however, received September 10, 2012 letters from THD that repeated the "Not my account, please delete" dispute and did not reference or include a copy of the Nevada Default Judgment. (Id. ¶¶ 255, 257.) In response to a request from TransUnion, OneWest again verified that the accounts belonged to Scharer. (Id. ¶¶ 260-61.) In October 2012, OneWest sent another out-of-cycle update to Experian regarding the disputed accounts that included the foreclosure references. (Id. ¶ 262.) Experian updated the credit file accordingly. (Id. ¶ 263.)

On December 21, 2012, TransUnion returned the account listings to conform to Palmer's request in his April 30, 2012 phone call. (Id. ¶ 265.) On January 7, 2013, following the initiation of this litigation, Experian removed the foreclosure references from Scharer's files. (Id. ¶ 263.)

## II. LEGAL STANDARD

---

[6] Scharer contends that the April 2012 letters included the Nevada Judgment and requested removal of the foreclosure notations on this basis. As noted above, Scharer lacks personal knowledge of the letters' content. His objections are accordingly overruled.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where the moving party has the burden of proof at trial, it must establish "beyond controversy every essential element" of its claim. So. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003) (internal quotation marks omitted). "This burden is not a light one." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). But the moving party need not disprove the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. Id. at 323-24; Fed. R. Civ. P. 56(c)(1). A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. See Celotex Corp., 477 U.S. at 322. In ruling on a summary judgment motion, the Court must construe the evidence in the light most favorable to the non-moving party. Nolan v. Heald College, 551 F.3d 1148, 1154 (9th Cir. 2009).

### III. DISCUSSION

#### A. Claims Against OneWest

##### 1. FCRA Claims

The FCRA imposes obligations on entities, such as OneWest, that furnish credit information to credit reporting agencies. See 15 U.S.C. § 1681s-2.[7] Subsection (b) imposes duties on furnishers that receive notice from a CRA that a consumer has disputed the accuracy of the furnisher's reporting. Id. § 1681s-2(b). "The purpose of § 1681s–2(b) is to require furnishers to investigate and verify that they are in fact reporting complete and accurate information to the CRAs after a consumer has objected to the information in his file." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1164 (9th Cir. 2009). After receiving notice from a credit rating agency, the furnisher must:

---

[7]Scharer concedes that the statute of limitations bars recovery for any known violations of the FCRA or CCRAA that occurred before November 9, 2010. (Opp. to CRAs' Mem. P. & A. 6); see also supra at n.4.

## MEMORANDUM

    (A) conduct an investigation with respect to the disputed information;

    (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

    (C) report the results of the investigation to the consumer reporting agency;

    (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

    (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly -- (I) modify . . . ; (ii) delete . . . or (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b). A private right of action exists for willful and negligent violations of these provisions. Id. §§ 1681n & o.[8] In the FAC, Scharer alleges that OneWest (1) negligently and willfully furnished inaccurate or incomplete information by failing to note that Scharer disputed the foreclosures' validity and (2) negligently and willfully failed reasonably to investigate his dispute.

    The Ninth Circuit does not appear to have addressed whether plaintiffs alleging unreasonable investigation under 1681s-2(b) must, as a predicate showing, establish the existence of "inaccurate or incomplete information; the Court follows the First Circuit in concluding that such a showing is required in this instance. See Chiang v. Verizon New England Inc., 595 F.3d 26, 37-38 (1st Cir. 2010). FCRA plaintiffs alleging that a credit reporting agency has failed reasonably to investigate a consumer dispute "must make a prima facie showing of inaccurate reporting." Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 890 (9th Cir. 2010) (internal quotation marks and citation omitted). This Court sees no reason why plaintiffs would have a higher burden as to credit reporting

---

[8] Except in circumstances not present here, only § 1681s-2(b) – not § 1681s-2(a) – provides for a private right of action. See FCRA § 1681s-2(c).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

agencies than to furnishers.[9] See Chiang, 595 F.3d at 37-38. Relatedly, considering plaintiffs are only entitled to "actual damages" for negligent violations of the FCRA, it is difficult to see how a plaintiff could establish damages absent a showing of actual inaccuracy. See id.; 15 U.S.C. § 1681o.[10] Given this backdrop, Scharer's FCRA claims against OneWest avoid summary judgment only if Scharer identifies a genuine dispute of material fact as to whether OneWest furnished incomplete or inaccurate information.

"An item on a credit report can be incomplete or inaccurate because it is patently incorrect, *or* because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Drew v. Equifax Info. Servs., LLC, 690 F.3d 1100, 1108 (9th Cir. 2012) (internal quotation marks, brackets, and citations omitted) (emphasis in original). Pursuant to this standard, "failure to report a bona fide dispute, a dispute that could materially alter how the reported debt is understood," gives rise to liability. Gorman, 584 F.3d at 113. At the same time, furnishers do not violate § 1681s-2(b) "simply by failing to report a meritless dispute, because reporting an actual debt without noting that it is disputed is unlikely to be materially misleading." Id.

Scharer fails to identify any fact to support his claim that the foreclosure notations were inaccurate or materially misleading. To the contrary, OneWest's reporting was patently accurate; the accounts undisputedly belonged to Scharer and the properties proceeded through foreclosure. Additionally, although failure to disclose a dispute can render otherwise accurately reported information incomplete or materially misleading, Scharer's identified dispute is meritless. As reflected in the FAC and his briefing before the Court, Scharer premises his improper foreclosure theory on the notion that he entered short sale agreements with IMFB or OneWest. But as noted above, the banks never approved a short sale of either foreclosed property, and neither Scharer nor his agent ever received a representation from the banks that they would stay foreclosures pending the

---

[9] One notable distinction between furnisher claims arising under § 1681s-2(b) and credit reporting agency claims arising under § 1681i is that plaintiffs carry the burden of establishing unreasonable investigation under § 1681s-2(b), but not under §1681i. See Gorman, 584 F.3d at 1157; Chiang, 595 F.3d at 37; Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995); Carvalho, 629 F.3d at 890-91. Under § 1681i, plaintiffs need only establish inaccurate reporting to make a prima facie case, but credit reporting agencies may escape liability by proving that the "inaccurate report was generated despite the agency's following reasonable procedures." Guimond, 45 F.3d at 1333.

[10] It is true that Scharer alleges willful violations of the FCRA. Nonetheless, as explained below, Scharer fails to provide a single fact supporting this claim. To the extent willful violations of the FCRA could support damages absent actual inaccuracy, this is not such a case.

**MEMORANDUM**

short sale negotiations. At most, Scharer testifies that he believed, based on conversations with his agent, that the banks would not sell the properties through foreclosure pending short sale discussions. Lacking any evidence beyond his own, baseless beliefs, no reasonable juror could conclude that Scharer had raised a bona fide dispute concerning the foreclosures' validity. OneWest had no duty to communicate a meritless dispute to the CRAs. See Gorman, 584 F.3d at 1163.

The Nevada Judgment, which arguably questions the validity of the disputed foreclosures, does not compel a different conclusion. Fundamentally, the foreclosures' validity was not before the Nevada court when judgment was entered. In his application for default judgment, Scharer expressly withdrew that portion of his suit and requested only an order compelling the CRAs – who were not parties to the Nevada suit – to remove the foreclosure notations from his credit reports. Moreover, and perhaps reflecting a concession regarding the Nevada Judgment's limited scope, Scharer does not rely on the Nevada Judgment to support his claim that the foreclosures were invalid. Rather, he claims that OneWest should have discovered the Nevada Judgment; that this discovery would have placed OneWest on notice regarding the dispute; and that OneWest should have thereafter noted the dispute alongside any foreclosure notation. (Opp. to OneWest Mem. P. & A. 6-7.) This argument is without merit. In light of Scharer's failure to identify any facts supporting a meritorious dispute, OneWest's failure to report the dispute does not give rise to liability under § 1681s-2(b).

Summary judgment is also appropriate for the alternative reason that Scharer fails to identify a genuine dispute of material fact as to whether OneWest conducted an unreasonable investigation. "[S]ummary judgment is generally an inappropriate way to decide questions of reasonableness because 'the jury's unique competence in applying the 'reasonable man' standard is thought ordinarily to preclude summary judgment." Gorman, 584 F.3d at 1157 (internal quotation marks and citation omitted). Nonetheless, summary judgment is proper "when only one conclusion about the conduct's reasonableness is possible." Id. (internal quotation marks and citation omitted).

OneWest's duty to conduct a reasonable investigation arose from each dispute notice it received from a CRA. Id. Because investigations arise in response to the dispute notice, "[t]he pertinent question is thus whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute from the description in the CRA's notice of dispute." Id. & n.11. The FCRA requires dispute notices sent from credit reporting agencies to furnishers to include "all relevant information regarding the dispute that the [CRA] has received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

Scharer has identified no facts to suggest that the CRAs' dispute notices to OneWest, in the form of ACDVs, described Scharer's dispute as relating to anything other than ownership of the accounts. As noted above, even Scharer's rebuttal expert

# MEMORANDUM

noted that the ACDVs related to ownership only and did not reference the Nevada Judgment. Given the ACDVs' limited content, no reasonable juror could conclude that OneWest's investigations, which repeatedly and accurately confirmed that the accounts belonged to Scharer, were unreasonable. Accordingly, OneWest is entitled to summary judgment on Scharer's FCRA claims.

### 2. CCRAA Claims

Section 1785.25(a) of the CCRAA is the act's lone provision applicable to furnishers that has not been preempted by the FCRA. See 15 U.S.C. § 1681t(b)(1)(F)(ii); see also Carvalho, 629 F.3d at 888-89. Scharer's CCRAA claims against OneWest are therefore limited to § 1785.25(a), which provides that a "person shall not furnish information on a specific transaction or experience to any consumer credit reporting agency if the person knows or should know the information is incomplete or inaccurate." The CCRAA's "incomplete or inaccurate" analysis parallels that of the FCRA. See Carvalho, 629 F.3d at 890-91. "[A] report violates [the CCRAA] when it is misleading or incomplete, even if it is technically accurate." Cisneros v. U.D. Registry, Inc., 39 Cal. App. 4th 548, 579 (1995).

As discussed above, Scharer fails to raise a genuine dispute of material fact as to whether OneWest's reporting was inaccurate or its investigation unreasonable. Accordingly, OneWest is entitled to summary judgment on Scharer's CCRAA claims.

### 3. Negligent Infliction of Emotional Distress

OneWest contends that FCRA § 1681t(b)(1)(F) preempts Scharer's NIED claim. Although the Ninth Circuit has held that this section preempts certain California statutes regulating furnishers, it has not addressed whether the section also preempts California common law. The Seventh and Second Circuits appear to be the lone Circuits to have confronted this issue, both concluding that § 1681t(b)(1)(F) does preempt state common law claims. See Macpherson v. JPMorgan Chase Bank, N.A., 665 F.3d 45, 48 (2d Cir. 2011); Purcell v. Bank of Am., 659 F.3d 622, 625 (7th Cir. 2011). This Court, joining the weight of authority favoring preemption and finding the Seventh and Second Circuit's analyses persuasive, concludes that Scharer's NIED is preempted. See, e.g. Samuel v. CitiMortgage, Inc., No. C 12-5871 MEJ, 2013 WL 1501491, *3 (Apr. 10, 2013) (collecting cases).

Even if § 1681(b)(1)(F) did not preempt the claim, Scharer's NIED claim is nevertheless preempted under § 1681h(e) because Scharer has not identified a fact that suggests OneWest acted with "malice or willful intent." 15 U.S.C. § 1681h(e). Scharer's conclusory claims that OneWest acted with the requisite mens rea lack factual support,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

rendering the claim appropriate for dismissal at summary judgment.

### B.     Claims Against the CRAs

#### 1.     FCRA Claims

The FAC identifies three FCRA provisions – §§ 1681s2-(b), 1681n, 1681o – that the CRAs have purportedly violated. Citation to these provisions, however, fails to provide the court with more than a vague idea of Scharer's precise claims. Section 1681s-2(b) applies to furnishers only and is inapplicable to the CRAs. Sections 1681n & o create liability for willfully and negligently violating other FCRA provisions but are not independently actionable. Notwithstanding this vagueness, given the CRAs' apparent assumption that Scharer alleges violations of §§ 1681e(b) and 1681i(a), which Scharer does not contest, the Court will read the FAC accordingly.

Under § 1681e(b), "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). "Liability under § 1681e(b) is predicated on the reasonableness of the credit reporting agency's procedures in obtaining credit information." Guimond, 45 F.3d at 1333. To make out a prima facie case, the "consumer must present evidence tending to show that a credit reporting agency prepared a report containing inaccurate [or materially misleading] information." Id.; Carvalho, 629 F.3d at 890-91. If a plaintiff establishes that a report was inaccurate or materially misleading, the credit reporting agency can escape liability if it establishes the error "was generated despite the agency's following reasonable procedures." Guimond, 45 F.3d at 1333.

Section 1681i(a), in turn, mandates that credit reporting agencies conduct reasonable investigations when a consumer disputes a credit item, and to take specific remedial steps when the disputed information is "found to be inaccurate or incomplete or cannot be verified." As with § 1681e(b), Scharer must establish that a credit item contained "patently inaccurate or materially misleading" information. Carvalho, 629 F.3d at 890-91 (internal quotation marks and citation omitted); see also Guimond, 45 F.3d at 1333.

The CRAs argue that summary judgment is warranted because Scharer has not identified a genuine dispute of material fact as to the inaccuracy of information in his credit files or reports. Scharer concedes that the disputed accounts belonged to him and proceeded through foreclosure. Nonetheless, he claims that the foreclosure notations were inaccurate or incomplete because they failed to reference the Nevada Judgment or Scharer's dispute regarding the foreclosures' validity.

As stated above, Scharer fails to present facts supporting his claim that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**MEMORANDUM**

foreclosures were improper. Given his concession, and that of his agent, neither OneWest nor IMFB represented that they would stay foreclosures pending short sale discussions, Scharer's belief that the banks had entered such agreements is insufficient to create a genuine dispute of material fact. See FTC v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir. 2010) ("[A court] need not find a genuine issue of fact if, in its determination, the particular declaration was uncorroborated and self-serving.").

Scharer's argument that the foreclosure notations were incomplete because the notations did not reference his dispute fails for an additional reason. The FCRA does not require credit reporting agencies to include a notation in the credit report that is not provided by the furnisher of the credit information. Gorman, on which Scharer relies, dealt with obligations that FCRA § 1681s-2(b) places on furnishers, not credit reporting agencies. 584 F.3d at 113-64. Carvalho, which involved FCRA provisions governing credit reporting agencies, confirms that Scharer's present argument is misplaced. 629 F.3d at 891-92. Although Carvalho extended the Gorman "patently inaccurate or misleading" standard to claims against credit reporting agencies, it made clear that credit reporting agencies have no duty to "provide a legal opinion on the merits" when faced with a dispute that presents a legal challenge to the validity of credit notation. Id. "Nor is a CRA obligated not to report any information about the disputed item simply because the consumer asserts a legal defense." Id. at 892. Had the Nevada Judgment rendered the foreclosures invalid, Scharer's claim could potentially proceed. But as explained above, the Nevada Judgment did not reach the issue of validity, and is therefore insufficient to create a genuine issue of material fact concerning the accuracy or completeness of the foreclosure notations. The CRAs are entitled to summary judgment on Scharer's FCRA claims.

        2.        **CCRAA Claims**

Scharer's CCRAA claims against the CRAs apparently arise under §§ 1785.14 and 1786.16 of the act.[11] These provisions constitute California's state law counterparts to 15 U.S.C. §§ 1681e(b) and 1681i(a), which underlie Scharer's FCRA claims against the CRAs. See Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1161 (9th Cir. 2013). Given the Court's determination that Scharer has not established a genuine issue

---

[11] The FAC does not specifically reference CCRAA § 1785.16. However, because Scharer's allegations could support a claim arising under this section, the Court assumes that Scharer intends to include § 1785.16 in his claims. In contrast, although the FAC identifies CCRAA § 1785.11, the citation appears mistaken because this section concerns the circumstances under which a credit reporting agency shall furnish a credit report, which is distinct from the allegations Scharer presses in the FAC and briefing before this Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## MEMORANDUM

of material fact as to whether the CRAs furnished credit reports or maintained credit files that were inaccurate or incomplete, the CRAs are entitled to summary judgment on Scharer's CCRAA claims as well.  See Carvalho, 629 F.3d at 890 ("[W]e operate under the assumption that California courts would interpret the FCRA and CCRAA consistently.").

### 3. Negligent Infliction of Emotional Distress

As with OneWest, Scharer fails to identify facts capable of supporting his claim that the CRAs acted with "malice or willful intent," a showing required to avoid preemption under FCRA § 1681h(e).  The CRAs are entitled to summary judgment on this claim.

## IV.   CONCLUSION

Defendants' motions for summary judgment are GRANTED.

IT IS SO ORDERED.